**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

                Chapter 11

INSTITUTO BIBLICO PABLO VI,
FUNDACION DE AMIGOS, INC.,        Case No.: 6:09-bk-06010-KSJ

    Debtor,
_____/

**DISCLOSURE STATEMENT IN SUPPORT OF**
**INSTITUTO BIBLICO PABLO VI, FUNDACION DE AMIGOS, INC.**

Oscar González, Jr., Esq.
Law Offices of Oscar González, Jr.
1400 N. Semoran Blvd., Ste J
Orlando, FL  32807
(407) 275-2105
Attorney for Debtor-in-Possession

August 28, 2009

## ARTICLE 1
## INTRODUCTION

1.01  Purpose:  The Disclosure Statement is provided by the Debtor hereinafter known as Instituto Biblico Pablo VI, Fundacion de Amigos, Inc.  The purpose of this Disclosure Statement is to provide information of a kind, and in sufficient detail of claims or interests of the relevant case to make an informed judgment about the plan. For the purpose of this Disclosure Statement where the word "plan" is used, it refers to the plan dated August 28, 2009.

1.02  No Representations: NO REPRESENTATIONS CONCERNING INSTITUTO BIBLICO PABLO VI, FUNDACION DE AMIGOS, INC., IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

The information contained herein has not been subject to audit. For that reason, the Debtor is unable to warrant or represent that the information contained herein is without inaccuracy, although every reasonable effort has been made to insure that such information is accurate.

1.03  Plan controls:  The plan should be closely reviewed in conjunction herewith. The Disclosure Statement is qualified in its entirety by reference to the plan. If there is any inconsistency between the plan and this Disclosure Statement, the terms of the plan will control.  All terms used in this Disclosure Statement will have the definitions specified in the plan unless otherwise defined herein or unless the context clearly requires otherwise.

## ARTICLE II
## SUMMARY OF CHAPTER 11

2.01  Property of the Estate:  The commencement of a Chapter 11 case creates an estate comprising all the legal and equitable interests of the Debtor in property as the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that the Debtor may continue to operate its business and remain in possession of her property as "Debtor" unless the Bankruptcy Court orders the appointment of a trustee.

2.02  Automatic Stay: Pursuant to Bankruptcy Code Section 362, the filing of a Chapter 11 petition operates as an automatic stay applicable to all entities of various actions, including actions to collect pre-petition claims from the Debtor or otherwise interfere with their property or business.

2.03   Plan of reorganization: The Chapter 11 plan sets forth the terms of financial reorganization.

2.04   Disclosure Statement: An acceptance or rejection of a plan may not be solicited after the commencement of a Chapter 11 case from a holder of a claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and written disclosure statement approved, after notice and a hearing, by the court as a containing "adequate information". Adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature of the debtor and the condition of the debtor' books and records, that would enable a hypothetical reasonable holder of claims or interests of the relevant class to make informed judgment about the plan.

2.05   Impairment: A class of claims or interests is "impaired" if the legal, equitable or contractual right attaching to the claims or interests of that class are modified. Modification for purpose of determining impairment, however, does not include curing defaults and reinstating maturity, so long as the holder of the claim or interests is compensated for any damages incurred as a result of reasonable reliance on contractual provisions or applicable non-bankruptcy laws that authorized acceleration of the debt after default.

2.06   Confirmation Standards:

General: The proponent of plan of reorganization must meet all applicable requirements of section 1129(a) of the Bankruptcy Code (except section 1129(a)(8) if the proponent proposes to seek confirmation of the plan under the provisions of section 1129(b) of the Bankruptcy Code). These requirements include, among other things, that: (a) the plan comply with applicable provisions of the Title 11 and other applicable law; (b) the plan be proposed in good faith; and (c) at least one impaired claim has voted to accept the plan.

Specific: Section 1129 of the Bankruptcy Code, which sets forth the requirements that must be satisfied in order for the plan to be confirmed, lists the following requirements for the approval of any plan of reorganization:

1. A plan must comply with the applicable provisions of the Bankruptcy Code, including inter alia, section 1123(a)(4) which provides that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Such anti-discrimination provision applies to contingent claims (such as guaranty claims) as well as all other claims or interests.

2. The proponent of a plan must comply with the applicable provisions of the Bankruptcy Code.

3. A plan must be proposed in good faith and not by any means forbidden by law.

4. Any payment made or to be made by the proponent, by the debtor or by a person issuing securities or acquiring property under a plan, for services or for cost and expenses in or in connection with the case, or in connection with such plan and incident to the case, must be approved by or subject to the approval of the Court as reasonable.

5. (a)(1). The proponent of a plan must disclose the identity and affiliations of any individual proposed to serve after confirmation of such plan, as a director, officer, or voting trustee of the debtor, or a successor to the debtor under such plan; and
   (2) The appointment to, or continuance in such office of such individual must be consistent with the interests of creditors and equity security holders and with public policy; and
(b) The proponent of a plan must disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for each insider.

6. Any governmental regulatory commission with jurisdiction, after confirmation of a plan, over the rates of the debtor must approve any rate change provided for in such plan, or such rate change is expressly conditioned on such approval.

7. Each holder of a claim or interest in an impaired class of claims or interests must have accepted the plan or must receive or retain under the plan an account of such claim or interest, property of value, as of the effective date of the plan, that is no less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the bankruptcy Code on such date; if the class is a class of secure claims that elects non-recourse treatment of the claims under section 1111 (b) of the Bankruptcy Code, each holder of a claim in such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8. With respect to each class of claims or interests, such class must accept the plan or not be impaired under the plan (subject to the "cramdown" provisions discussed below).

9. Except to the extent of a particular claim that has agreed to a different treatment of such claim, a plan must provide that:
   A. With respect to an administrative claim and certain claims in an involuntary case, on effective date of the plan, the holder of the

        claim will receive on account of such claim cash equal to the allowed amount of the claim;

    B. With respect to a class of priority wage, employee benefit, consumer deposit and certain other claims described in subsections 507(a) (3)-(6) of the Bankruptcy Code, each holder of a claim of such class will receive. None exist.

        (1) If such class has accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

        (2) If such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

    C. With respect to a priority tax claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such claim, of a value, as the effective date of the plan, equal to the allowed amount of such claim.

10. If a class of claims is impaired under a plan, at least one class of claims that is impaired under such plan must have acceptance of the plan by any insider.

11. Confirmation of a plan must not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is the so-called "feasibility" requirement.

12. All fees payable under section 1930 of Title 28, United Code, as determined by the Court at the hearing on confirmation of the plan, must have been paid or the plan must provide for the payment of all such fees on the effective date of the plan.

13. A plan must provide for the continuation after its effective date of payment of all retiree benefits, as that terms is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated herself to provide such benefits.

This disclosure statement discusses in more detail three (3) of these requirements: (a) feasibility of the plan; (b) acceptance by impaired classes; and (c) the minimum value standard. Further, the required disclosures described in paragraph five (5) above contained herein. The Debtor believes that the plan meets all the

        requirements of section 1129 (a) of the Bankruptcy Code, and will seek a ruling of the Court to this effect at the hearing on confirmation of the plan.

2.07    Feasibility of the plan: the future income of the Debtor will be used to fund the plan.

2.08    Acceptance of the plan: As a condition of confirmation, the Bankruptcy Code requires that each impaired class of claims or interests accept the plan. The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of two-thirds in dollar amount and a majority in number of claims in that class, but for that purpose counts only those who actually vote to accept or reject the plan. The Bankruptcy Code defines acceptance of a plan by a class of interests (equity securities) as acceptance by holders of two-thirds of the number of shares, but for this purpose counts only shares actually voted. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting a plan.

        Classes of claims of interests that are not "impaired" under a plan are deemed to have accepted the plan and are not entitled to vote. A class is deemed not to have accepted the plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests. Acceptances of the plan are being solicited only from those who hold allowed claims or interests in an impaired class. A ballot to accept or reject the plan will be send with plan and this Disclosure Statement for the creditors to use to decide to vote.

2.09    Best Interest of creditors and equity security holders; liquidation analysis: Even if the plan is accepted by each class of creditors and equity security holders, to confirm the plan, the Court must independently determine that the plan is in the "best interests" of all classes of creditors and equity security holders impaired by the plan. The "best interests" test requires that the Court find either that: (i) all members of an impaired class of claims or interests have accepted the plan; or (ii) the plan will provide each non-accepting member of the class with a recovery that has a value at least equal to the value of the distribution that each such member would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code.

        To calculate what members of each impaired class of creditors and equity security holders would receive if a debtor were liquidated, the Court must first determine the aggregate dollar amount that would be generated from the Debtor's assets if the Chapter 11 case was converted to a Chapter 7 case under the code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 Trustee.

        The amount of liquidation value available to unsecured creditors would be reduced first by the claims of secured creditors to the extent of the value of their collateral and then by the costs and expenses of liquidation, as well as by other

administrative expenses of both the Chapter 7 case and the Chapter 11 case. Cost of liquidation under Chapter 7 of the Code would include compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition, expenses, all unpaid expenses incurred by the debtor in their Chapter 11 case (such as compensation of attorneys, financial advisors and accountants) that are allowed in the Chapter 7 case, litigation costs and claims arising from the operations of the debtor's business during the pendency of the Chapter 11 case. The liquidation itself would trigger certain priority claims, such as claims for severance pay, and would accelerate other priority payments that otherwise would be in the ordinary course of business. Those priority claims would be paid in full out the liquidation proceeds before the balance would be made available to pay general claims or to make any distribution with respect to equity interests.

In liquidation, distinctions among classes of unsecured claims are generally eliminated. Once the court ascertains the recoveries in liquidation of secured creditors, administrative and other priority claimants, general creditors and equity security holders, those recoveries are compared with the distributions offered to each class of claims or interests under the plan of reorganization to determine if the plan of reorganization is in the best interest of creditors and equity holders of each class.

Debtor states (a) the plan is in the best interests of creditors and equity holders; and (b) that the holders of claims in each impaired class will receive more under the plan than they would in liquidation. A liquidation analysis was prepared by the debtor to show little money available to fully pay all creditors. The liquidation analysis contains specific valuations, estimated recoveries, and a description of the procedures followed, the factors considered, and the assumptions made in preparing the analysis. The liquidation analysis is attached hereto as Exhibit "A".

2.10 Confirmation without acceptance of all impaired classes (cramdown):
The Bankruptcy Code contains provision for confirmation of a plan of reorganization even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the plan. The provisions for confirmation of a plan despite the non-acceptance of one or more impaired classes of claims or interests are set forth in section 1129(b) of the Code. If a plan of reorganization is to be confirmed despite the rejection of a class of impaired claims or interests, then the proponent of the plan must show, among other things, that the plan of reorganization does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

If a class of secured claims rejects the plan, the plan may still be confirmed if it provides (a) that the holders of such claims retain the liens securing the claims to the extent of the allowed amount of the claims, and that they receive deferred cash payments totaling at least the allowed amount of the claims of value, as of the

effective date, of at least the value of their interest in the estate's interest in the collateral securing the claims, or (b) for the sale of the collateral securing the claims, free and clear of liens, with the liens to attach to the proceeds of the sale and for treatment of such liens in the manner specified in clause (a) above, or (c) below, or (c) for the realization by such holders of the indubitable equivalent of the claims. Clause (c) has been interpreted by some courts to include a surrender of the collateral securing a claim.

If a class of equity security holders rejects the plan, the plan may still be confirmed if it provides (a) for each holder of an interest included in the rejecting class to receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) that the holder of any interest that is junior to the interest of such class will not receive or retain any property under the plan on account of such junior interest.

If the plan is not accepted by requisite votes received from each impaired class, Debtor will consider seeking confirmation of the plan pursuant to section 1129(b) of the Code.

## ARTICLE III
## THE DEBTOR AND ITS BUSINESS

3.01   History of the Debtor and Events Leading to Chapter 11: The Debtor, not-for-profit Florida corporation dedicated to the promotion and diffusion of the Roman Catholic faith and ideology through providing services ranging from personal, couples, and family counseling to Biblical workshops, classes, and seminars. The Debtor also organizes and guides travel tours to the Holy Land and other locations of interest to Roman Catholics. It is an organization both financially and logistically independent from the Roman Catholic Church, but recognized by different elements of the Church as providing necessary services to the community. The Debtor is run by Orlando Navas, a counselor and psychologist specializing in matters concerning the Latin American family.

The Debtor was conceived in order to be able to better serve the increased members of the community interested in the services it provides. The Debtor's mission, however, was severely hampered by building delays and the general downturn in the economy. Consequently, the increased revenue flows anticipated for the christening of the Debtor's first permanent headquarters were also deferred. Combined, these events essentially resulted in Debtor being unable to timely comply with all of its financial obligations. Note, however, that Debtor disputes some of the financial obligations for which it is currently being encumbered.

Debtor did not qualify for Chapter 13 relief in that it is a corporate entity. Furthermore, Debtor's efforts to make arrangements with its creditors prior to filing for bankruptcy relief proved unsuccessful.

## ARTICLE IV
## DEBTOR'S BANKRUPTCY CASE

4.01   Commencement of the case: On April 30, 2009 the debtor filed its petition for relief under Chapter 11 of the bankruptcy Code.

4.02   Proceedings in bankruptcy case:
 a. Debtor: Since the petition date, the Debtor has managed its property as a Debtor under the authority of sections 1107 and 1108 of the Bankruptcy Code and Court orders entered in this case.

b. The filed monthly reports show that the Debtor's ability to cover its expenses has improved somewhat. Moreover, they show that the Debtor may be able to adequately fund the Chapter 11 plan through its operations.

4.03   The Debtor's liquidation analysis shall be attached hereto as Exhibit "A".

## ARTICLE V
## SUMMARY OF THE PLAN

5.01   The following is a summary of principal provisions of the plan. This summary is qualified in its entirety by reference to the plan. If there is any variation between this summary and the plan, the plan will control.

5.02   *Secured Claim of First National Bank of Central Florida-* consists of secured claim of First National Bank of Central Florida who holds a mortgage on the debtor base of operations. Debtor is current and will continue with the normal monthly payment of $4,046.75.

5.03   *Secured Claims of Southeast Toyota Finance, Southern Design Consultants, Inc., and Orange County Tax Collector* for the following claims:

A.   The Allowed Secured Claim of Southeast Toyota Finance in the amount of $*12,623.00* shall be paid $*248.58* monthly pursuant to the contractual terms. Southeast Toyota Finance shall retain its lien on the 2008 Toyota Yaris, VIN: *JTDBT923X81268443*.

B.   The Allowed Secured Claim of Southern Design Consultants, Inc. in the amount of *$65,712.63* shall be the subject of a forthcoming objection. The Debtor agrees to pay a total of $5,000.00 for this claim. Said amount will be paid in 72

monthly installments of *$69.45*. Southern Design Consultants, Inc. shall retain its lien on Debtor's base of operations located at 1858 N. Dean Road, Orlando, FL 32817.

C.   The Claim of Orange County Tax Collector in the amount of $5,912.88 previously has been the subject of an objection. The claim, filed as a priority claim, is in fact a secured claim. As such they are liens upon the secured property to which they pertain. Debtor agrees to pay the Claim amount of $5,912.88, representing the sum owed for its Base of Operations. Said amount will be paid in 72 monthly installments of $82.13. Orange County Tax Collector shall retain its liens on the various surrendered secured properties as well as Debtor's base of operations located at 1858 N. Dean Road, Orlando, FL 32817.

5.04   *Unsecured Claims of Non-Insiders of $2,000 or less, or who reduce to $2,000 -* This class will be paid within 180 days of the effective date of the Plan, without interest. To elect to reduce a claim to $2,000.00, the creditor must do so within 15 days after the confirmation order, or as part of their ballot voting on the plan. This class is impaired.

5.05   *Other Unsecured Claims of Non-Insiders-* These claims will be paid 10% of the allowed amount of their claim. Non-interest, non-negotiable promissory notes will be issued. The promissory note will be paid in 24 equal quarterly payments. The first quarterly payment will begin 45 days from the effective date of the plan. This class is unimpaired.

5.06   *Priority Tax Claims-* consists of a single Priority Tax Claim: the *Internal Revenue Service.*

A.   The Allowed Priority Claim of Internal Revenue Service in the amount of *$3000.00* will be paid in monthly installments of *$41.67*. Internal Revenue Service shall retain its lien (if any) on the various surrendered secured properties as well as Debtor's base of operations located at 1858 N. Dean Road, Orlando, FL 32817. All such claims will receive the full principal balance due to those timely filed and allowed claims within 72 months from the date of assessment. Debtor will pay an equal monthly payment without interest, over 24 quarterly payments. Non-interest, non-negotiable promissory notes will be issued.

5.07   *U.S. Trustee Fees-* Fees payable under 28 U.S.C. section 1930 will be paid when due an even, in any event, prior to the entry of a final decree or other disposition of the case.

5.08   *Administrative Expenses*: Allowed administrative expenses will be paid within 60 days of the effective date of the plan, unless otherwise agreed by the holders of such claims. Administrative expense claims incurred in the ordinary course of the business will be paid in the ordinary course. All administrative claims incurred

       outside the ordinary course of business but remain unpaid will be paid within ten(10) days of the entry of an order allowing the administrative claim, whichever occurs later.

5.09    Assumptions and rejections of executory contracts and unexpired leases: If not already addressed, the reorganized Debtor will assume the executory contracts with First National Bank of Central Florida (regarding its Base of Operations), and Southeast Toyota Finance.

5.10    Funding of plan: The future income of the Debtor will be used to fund the plan.

## ARTICLE VI
## THE REORGANIZED DEBTOR

6.01    Description: The reorganized debtor will continue as a Florida Not-for-Profit.

6.02    Debtor Instituto Biblico Pablo VI, Fundacion de Amigos, Inc. expects to continue its operations as a spiritual counseling and educational center after the plan is consummated, and at least until the Order closing this Chapter 11 case in entered.

## ARTICLE VII
## CERTAIN RISK FACTORS

7.01    Appeals to confirmation order: An appeal from the order of confirmation will delay the consummation of the plan.

7.02    Delay: The Debtor may object to claims for 30 days after confirmation of its plan. Accordingly, to the extent the Debtor files objections to claims, payment of such claims under the plan will be delayed pending final judicial or agreed resolution of the objections, including all appeals.

## ARTICLE VIII
## ALTERNATIVES TO PLAN

8.01    If the plan is not accepted, it is anticipated the Debtor will move to dismiss or move to convert to a Chapter 7. In the attached Exhibit "A" Chapter 7 liquidation analysis, it is estimated that the creditors will not be fully paid as is anticipated they will be with this Chapter 11 Bankruptcy.

**[THIS SECTION INTENTIONALLY LEFT BLANK]**

8.03 **Alternatives if plan not confirmed:** If no plan of reorganization can be confirmed, then the Chapter 11 case may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. The proceeds of a Chapter 7 liquidation (if any) would be distributed to the creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

Alternatively, if in the best interest of creditors and the estate, the case could be dismissed. Presumably, in that case, the holder of the main secured claim (First National Bank of Central Florida) would avail itself of its legitimate remedies under their loan agreements with the debtor and under applicable non-bankruptcy law, leaving title or no property available for distribution to holders of administrative, priority and general unsecured claims.

## ARTICLE IX
## TAX CONSEQUENCES OF PLAN

9.01 **To creditors:** Confirmation of Debtor's plan of reorganization is anticipated to result in less than 100% payment to non-insider creditors. Debtor will not receive any distribution. Moreover, the tax consequences of the plan to certain creditors or equity holders may be different from the tax consequences to other similarly situated classes. All claim classes should therefore consult with their own advisors regarding the plan's tax impact on them, if any.

Dated this 28th day of August 2009

Instituto Biblico Pablo VI,
Fundación de Amigos, Inc., Debtor

By: _____
Orlando Navas, Pres/CEO

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of August 2009, a true and correct copy of the foregoing Chapter 11 Disclosure Statement was served by U.S. Mail, First Class and by electronic filing to the following:

Instituto Biblico Pablo VI, Fundacion de Amigos, Inc., 1858 N. Dean Road, Orlando, FL 32817.

Elena L. Escamilla, Esq., United States Trustee's Office, 135 W. Central Blvd., Ste 620, Orlando, FL 32801

All Creditors and Parties in Interest located on the attached mailing matrix

/S/ Oscar González, Jr.           .
Oscar González, Jr.
Attorney for Debtor